# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>JOSEPH M. WOODRUFF and<br>MELISSA B. WOODRUFF,<br><br>Debtors | Chapter 7<br>Case No. 08-30999-HJB |

## MEMORANDUM OF DECISION

Before the Court are the United States trustee's (the "UST") Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and (2) [and seeking other relief] (the "First Motion to Dismiss") and Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and (3) (the "Second Motion to Dismiss;" together, the "Motions to Dismiss").  The issues raised are whether (i) when completing Official Form *22A Chapter 7 Statement of Current Monthly Income and Means Test Calculation* (the "Means Test Form") in order to make the calculations required under § 707(b)(2) (the "Means Test"),[1] debtors are required on Line 25 thereof to list their monthly tax withholdings consistent with their tax liability actually *anticipated* or instead may list the amount actually *withheld* by their employers; and (ii) this Court has been granted the statutory discretion to decline dismissal of a Chapter 7 case even if the presumption of abuse as determined by § 707(b)(2) is unrebutted in the fashion

---

[1] Unless otherwise noted, all statutory references will be to Title 11 of the United States Code. 11 U.S.C. §§ 101, et seq.

1

mandated by § 707(b)(2)(B).

I. <u>FACTS AND POSITIONS OF THE PARTIES</u>

Joseph and Melissa Woodruff (the "Debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Code") on July 8, 2008. The Debtors filed the Means Test Form concurrently. While their calculations demonstrated that they were above-median debtors with an annualized current monthly income ("CMI") (as defined by § 101(10A)) of $119,526,[2] their monthly disposable income amounted to only $24.66. When calculated over sixty months, the resulting $1,479.60 was far less than the $10,950 that would give rise to a presumption of abuse under § 707(b)(2).

The UST, however, disagreed with the Debtors' calculations. On September 15, 2008, the UST filed her First Motion to Dismiss pursuant to § 707(b)(1) and (2). There, the UST contends that various expense deductions by the Debtors are inflated and should be adjusted downward. The most significant reduction demanded by the UST is in Line 25's statement of actual tax liability. While the Debtors listed that liability at $2,317.68, the UST maintains that the amount should be reduced to $1,687.61.[3] This adjustment alone would result in $679.76 per month in disposal income, or $40,785.60 over the life of a Chapter 13

---

[2] Pursuant to § 707(b)(7), a motion to dismiss may not be filed under § 707(b)(2) unless the debtors' CMI multiplied by twelve is equal to or less than "in a household of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number or fewer individuals." It is undisputed that the Debtors' CMI exceeds the median income for the Debtors' family size in the Commonwealth of Massachusetts. The Debtors have two dependents and at the time of case commencement, the median family income in Massachusetts for a four-person household was $91,892. The Debtors report that their current monthly income times twelve is $119,526.

[3] In light of its holding here, the Court need not reach the other objections made by the UST to the Debtors' calculations.

case – more than enough to satisfy a presumptive finding of abuse under § 707(b)(2) and permit a substantial payment toward the Debtors' scheduled $53,428.21 of general unsecured debt.

On February 4, 2009, the UST filed her Second Motion to Dismiss Pursuant to § 707(b)(1) and (3). There, the UST argues that the Debtors' case should be dismissed as a bad faith filing under the totality of the circumstances test. The UST complains that the Debtors' monthly expenses of $8,786.70 include $600 for home improvements, $1,900 for food, and payments for a hot tub and pool. Further, the UST notes that in the three to four months preceding their bankruptcy filing, the Debtors had obtained and purportedly spent $10,142 received in tax refunds and $46,983.04 received from the sale of their former residence in North Carolina. These sums, together $57,125.04, exceeded the total unsecured claims set forth in the Debtors' Schedules. In response, the Debtors argue that the monies were used to purchase items necessary for the preservation of their family's financial and physical well-being and the purchases were made after consultation with their bankruptcy counsel.

A consolidated evidentiary hearing was held on the respective Motions to Dismiss. A financial analyst for the UST testified that the Debtors had a pattern of overwithholding taxes from their paychecks, resulting in annual refunds of well over $6,000 in each of the years 2005, 2006, and 2007. This testimony was not materially disputed. Thus, at trial, this Court identified the threshold issue under § 707(b)(2) as how the Debtors' tax liability should be calculated for the purposes of determining the Debtors' monthly disposal income

and completing Line 25 of the Means Test Form.[4]

After the hearing, the parties were asked to submit supplemental briefs and information on the Debtors' actual tax liability. In their supplemental briefs, however, the parties were unable to agree on the Debtors' actual tax liability. For the purposes of this opinion, this Court adopts the numbers most favorable to the Debtors, who claim actual tax liability averaging $2,064.73 per month.[5] The Debtors continue to argue, however, that regardless of the outcome of the parties' § 707(b)(2) dispute, this Court has the statutory discretion to make an independent determination of the suitability of a Chapter 7 discharge in this case.

II. DISCUSSION

A. Section 707(b)(2) and the Presumption of Abuse

Pursuant to § 707(b)(2)(A)(i), the Court must presume abuse exists:

(i) . . . if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

(II) $10,950.

11 U.S.C. § 707(b)(2)(A)(i). The Means Test calculation requires that from the debtor's CMI there be deducted certain categories of expenses in statutorily prescribed amounts

---

[4] In light of its holding here under § 707(b)(2), this Court need not go on to make findings relative to the issues presented by the UST under § 707(b)(3).

[5] The UST suggests the Debtors' actual tax liability is $1,968.88 monthly. The difference between the two positions is not outcome determinative.

4

and other categories of expenses in the amount actually incurred by the debtor. Monthly employment taxes fall into the latter group and are identified in the Means Test Form on Line 25. See § 707(b)(2)(A)(ii).[6] That line requests that the debtor list the "total average monthly expense . . . actually incur[red] for all federal, state, and local taxes." The question remains whether Line 25 (or more accurately stated, the statute) requires that debtors deduct their monthly tax liability by anticipating their annual tax liability and dividing by twelve or by listing the amount withheld monthly from their paychecks.

Although courts have struggled with the best way to calculate a debtor's actual monthly tax expense, the courts have held that for the purposes of the Means Test Form, the amount withheld is not the appropriate way to measure a debtor's actual tax liability unless the debtor will not receive a tax refund. In re Robinette, No. 7-06-10585, 2007 WL 2955960 at *3 (Bankr. D. N.M. Oct. 2, 2007)(the amount withheld is the appropriate amount for Line 25 because no tax refund is anticipated); In re Bishop, No. 07-50431, 2007 Bankr. LEXIS 3096, at *10-*11 (Bankr. E.D. Ky. Sept. 17, 2007)(Line 25 must state actual tax liability and overwithheld funds "must be included as disposable income in completing the

---

[6] Section § 707(b)(2)(A)(ii)(I) provides in relevant part:

(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

5

means test to determine whether or not the presumption of abuse of the bankruptcy system arises in a given case"); In re Lipford, 397 B.R. 320, 334 (Bankr. M.D.N.C. 2008)(stating "the payroll withholding amounts for taxes are not necessarily reliable, and therefore, a determination of the debtor's actual tax liability is necessary"); In re Barbour, No. 09-00553-8-RDD, 2009 WL 3053697 at *5 (Bankr. E.D.N.C. Sept. 18, 2009)(finding a history of tax refunds indicates that the amount withheld is not an accurate portrayal of actual tax liability for the purposes of Line 25).[7]

This issue has been addressed directly in another case in the District of Massachusetts. Judge Rosenthal has held that the Means Test requires a debtor to list the actual taxes he or she anticipates will be due to the government, not the amount withheld by the debtor's employer. In re Bernard, 397 B.R. 605 (Bankr. D. Mass. 2008). In Bernard, Line 25 of the Means Test Form originally filed by the debtors listed the amount of taxes withheld monthly from the debtors' pay. Id. at 607. The UST argued that this deduction was "excessive" because the debtors had received a net tax refund of over $5,000 in the prior year, a refund that was "typical of what the Debtors had received in prior years." Id. The court first concluded that the case law uniformly required the debtors to estimate their actual tax liability and then turned to how debtors should determine their actual tax liability when tax documents have not yet been prepared. Relying on the reasoning set forth in

---

[7] Most bankruptcy courts addressing this issue in the Chapter 13 context have reached the same conclusion. In re Stimac, 366 B.R. 889, 893 (Bankr. E.D. Wis. 2007); In re Lawson, 361 B.R. 215, 222 (Bankr. D. Utah 2007); In re Balcerowski, 353 B.R. 581, 587-89 (Bankr. E.D. Wis. 2006). Some courts, however, have permitted a Chapter 13 debtor to list the amount withheld, even if that sum would lead to a refund, so long as the debtor dedicates some or all of that tax refund to the plan. In re Stimac, 366 B.R. at 893; In re Raybon, 364 B.R. 587, 590-91 (Bankr. D.S.C. 2007). Of course, such an exception is not applicable in the Chapter 7 context.

6

Lipford, the court held that the debtors "should begin with the actual amount of taxes paid for the year prior to filing and then make whatever adjustments, upward or downward, are necessary" in order to determine the actual amount of tax liability. Id. at 609. The court found without merit the debtors' argument that their overwithholding would make it difficult to fund a Chapter 13 plan because "the Debtors control the amount of the withholdings and may change the amount at any time by completing new W-4's." Id. This Court finds Judge Rosenthal's analysis in Bernard well-reasoned and persuasive.

The facts now before this Court are nearly identical to those in Bernard. The Debtors are above-median debtors for a family of their size residing in the Commonwealth of Massachusetts, and thus are subject to the Means Test. The Debtors calculated their actual monthly tax liability by using the amount typically withheld from their paychecks, despite significant annual tax refunds in past years. This methodology was incorrect.

Holding all other parts of the Means Test constant and revising Line 25 of the Means Test Form to $2,064.73, the Debtors' total allowed deductions under § 707(b)(2) are $9,682.89. When subtracted from their current monthly income of $9,960.50, the Debtors are left with monthly disposable income as measured by § 707(b)(2) of $277.61. Multiplying this monthly disposable income by sixty, the months to be covered by a theoretical Chapter 13 plan, the Debtors have total disposable income of $16,656.60. Because this number exceeds the maximum allowed under § 707(b)(2)(A)(i) ($10,950), the presumption of abuse arises in this case. And the Debtors have not rebutted the presumption.

B.  Discretion Under Section 707(b)

Section 707(b)(1) provides that when the presumption of abuse has arisen in a Chapter 7 case, the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title." 11 U.S.C. § 707(b)(1).  The use of the word "may" in the statute raises a question of how much, if any, discretion Congress intended to give the courts once a presumption of abuse has been found – if unrebutted by the "special circumstances" set forth in § 707(b)(2)(B)(i).  The courts have differed significantly on the appropriate interpretation of the word "may" in this context.  Compare In re Skvorecz, 369 B.R. 638, 642-44 (Bankr. D. Colo. 2007)(holding that the court has discretion under § 707(b)(1) to allow a presumptively abusive case to remain in Chapter 7) and In re Mravik, 399 B.R. 202, 210 (Bankr. E.D. Wis. 2008)(holding that "the Court has discretion to deny a motion to dismiss a Chapter 7 case that is presumed abusive under the means test, but would, in complete compliance with Chapter 13, produce no payments to creditors")[8] with In re Justice, No. 07-5231, 2008 WL 4368668 at *5 (W.D. Ark. Sept. 22, 2008)(holding that "the better view is that § 707(b)(1) is mandatory" and "[w]hile the use of the word 'may' in statutory drafting generally indicates discretion, that is not always the case") and In re Haman, 366 B.R. 307, 311 (Bankr. D. Del. 2007)(stating that the court has no discretion unless special circumstances pursuant to § 707(b)(2)(B) exist).

---

[8] It is important to note that in both of these cases where the Court found it had discretion under § 707(b)(1), a Chapter 13 plan would have yielded no payments to creditors due to the differential treatment of retirement plan payments under Chapters 7 and 13.  No such complexity exists here.  There is every indication in this case that a substantial dividend to creditors would be realized through a Chapter 13 plan.

8

This Court reluctantly agrees with the Haman and Justice courts' reasoning. By explicitly providing in providing in § 707(b)(2)(B)(i) that "[i]n any proceeding brought under this subsection, the presumption of abuse *may only be rebutted* by demonstrating special circumstances," (emphasis added), Congress evinced its intent to divest the bankruptcy courts of the discretion necessary to grant a Chapter 7 discharge to debtors whose case is found abusive under § 707(b)(2). No such special circumstances have been offered in this case.

"The Means Test essentially removes the finding of substantial abuse from the Court's discretion and largely reduces it to an arithmetic formula." In re Bernard, 397 B.R. at 610. See also In re Hayes, 376 B.R. 55, 65 (Bankr. D. Mass. 2007)(where this Court found that "the intent of Congress in creating the specific mechanics of the means test under § 707(b)(2) appears more to have been a plan to reduce judicial discretion on the question of whether a particular case is presumed 'abusive'"). The permissive word "may" in § 707(b)(1) permits the Court only to choose between the two options provided – dismissal or conversion to Chapter 13. In re Justice, 2008 WL 4368668 at *5. "Once the Court determines that the Means Test has been correctly calculated and that no special circumstances have been established, the Court has no choice but to dismiss the case if the Debtors refuse to convert the case to one under Chapter 13." In re Bernard, 397 B.R. at 610.

III.  CONCLUSION

In this case, when the Means Test prescribed by § 707(b)(2) is calculated to include the Debtors' actual tax liability, rather than the amount withheld from their paychecks, the

9

presumption of abuse arises.  Once the presumption arose, the Debtors could only rebut the presumption by demonstrating "special circumstances" under § 707(b)(2)(B) .  Because no such special circumstances were demonstrated, the UST's First Motion to Dismiss will be GRANTED.  That order will effectively moot the UST's Second Motion to Dismiss and the issues raised thereunder.  The Debtors will be given fourteen days to file a motion to convert to Chapter 13; otherwise, the case will be dismissed without further hearing.

Separate orders consistent with this Memorandum will issue accordingly.

DATED:   October 13, 2009

By the Court,

_____

Henry J.  Boroff
United States Bankruptcy Judge